## No. 14,255.

## JOHN J. WATT VS. D. B. WILLIAMS.

### SYLLABUS.

Defendant had written to a real estate agent informing him of his willingness to sell a tract of land at a stated price.

Two years afterward, without communicating with defendant, and when it was apprehended by this agent, who informed plaintiff that there was reason to infer that he, defendant, would not accept the price offered, the agent undertook to sell the property and bind the defendant although he had not been specially authorized to sell the property.

When defendant received the letter informing him of the action of the real estate agent, he did not approve or decline. Shortly afterward it became known from defendant that he was not willing to sell at the price offered.

Plaintiff had not deposited the whole amount of the price. He withdrew the amount deposited, which was less than the price, and plaintiff afterward sought to buy other lands. Having failed in the second attempt at buying lands, he sought to hold the defendant in damages. This claim for damages is too speculative and uncertain to serve as a valid basis for a judgment. Plaintiff acquired no title to the land he claims to have bought from defendant.

The fee of the curator, appointed to represent defendant in the attachment proceedings as fixed by the district judge, is not too large, and under a special statute the curator's fee may be increased to an amount corresponding with the value of the services.

APPEAL from the Fifteenth Judicial District, Parish of Calcasieu —*Miller, J.*

*Cline & Cline,* for Plaintiff, Appellant.

*S. D. Read,* Curator *ad hoc,* for Absentee, Defendant, Appellee.

*J. W. Bryan* and *R. P. Williams,* Intervenors and Appellees.

The opinion of the court was delivered by

BREAUX, J.   Plaintiff, alleging that defendant failed to carry out his contract as vendor of land, he claims to have purchased from him, sues him to recover three thousand two hundred and forty dollars as damages. The alleged price of the land is sixteen hundred dollars, and August, in the year 1900, the date of the purchase.

We are informed by the record that D. B. Williams, who is a citizen of and resides in Great Britain, sold the land through the agency of a

real estate firm of Jennings, La.; that in a letter from his home in Great Britain, addressed to this firm, bearing the date of January 28th, 1898, Williams informs this firm that he cannot accept five dollars an acre for the one-fourth mentioned in the letter which letter he had received from the firm, but that if the real estate firm could get five dollors an acre for the half section in one payment clear to himself he would sell, otherwise he wanted at least six dollars and fifty cents an acre for the northeast quarter of the tract with the usual conditions, and seven dollars and fifty cents an acre for the southeast quarter, and adds, copying *verbatim* from the letter, "Kindly list these prices."

Having left England and being in Canada, he, on April 8th, 1898, again wrote to this firm enclosing his address in case it, the real estate firm, wished to communicate with him in regard to the sale of his land. In this letter he describes his land as the E. ½ Sec. 30, T. 7 S.

Plaintiff states that upon this authority the real estate firm offered the land, but owing to depressed conditions at the time this firm obtained no offers for the land at the price fixed by Williams until August, 1900, when it the price was offered by it to plaintiff, Watt, in a letter by it to Watt stating that in looking over its correspondence with David Williams it found that it set forth in its last letter to it (the letter last referred to by us) in regard to the half section, that if he could get five dollars an acre cash net to him he would sell, otherwise that he asked as the price of the northeast quarter six dollars and fifty cents, and the southwest quarter seven dollars and fifty cents per acre, on the usual terms. The firm in this letter to Watt said it supposed that the terms would be one-third cash, balance in one and two years, at 8 per cent. interest. It also states that it had not written to defendant, williams, in accordance to promise made to plaintiff, Watt, to quote from the letter: "Because he certainly will take no less for it now and the chances are about nine to ten that if we write him he will put that land at ten dollars an acre, as it has been some time since he wrote us; while on the other hand, if you would be willing to close at these prices, we could close the deal and he would be obliged to make the deed."

In a few days Watt answered and said that he was willing to take the land at five dollars an acre for the east half, and three days after the firm in question wrote to Williams, the defendant, that it had sold the half section of land to plaintiff, Watt, for the price mentioned in the latter's letter, and requested Williams to make out the deed and send it to one of the banks at Jennings or direct to it (the firm), and upon its

receipt it would be signed by the buyer, that it held the amount of the price.

This firm added in this letter: " The China neighborhood (in which this land is) looks rather deserted on account of the failure of the 'providence rice' for so long; a great many of these people had left that country and moved to Jennings onto lands that are irrigated. Hope that you will attend to this at once," and instructions were given regarding stamps required on the deed.

Defendant swore that he had received a letter about June, 1900, from the real estate firm stating that it had received five dollars an acre from Watt for the premises described and that it was on deposit in the bank, but did not say that it had been placed in his (defendant's) name.

The China, not Asiatic China, but China sixteen miles northwest of Jennings, referred to in the letter, was not unknown to the defendant, as he had, at one time, been a resident at or near the locality. One copy of the letter was addressed to the defendant at a postoffice in Canada, where he had directed the firm to address his letters, and another to him in Great Britain.

The letter did not reach the defendant before the October following, by reason of the fact that defendant had changed his postoffice. He, Williams, answered acknowledging receipt, and stated that he would " attend to the matter in a few days."

Plaintiff says, in substance, that deep wells for irrigation purposes proved successful at and near China, La., and that a number of persons sought to buy rice lands and that, in consequence, the land he claims to have bought advanced in value, and that defendant doubtless learned of the rapid enhancement in prices, and that instead of signing a deed to him (Watt) he sought to convey it to B. F. Coffall, on December 4th, 1900, for the price of seven dollars per acre; that plaintiff, hearing of this, withdrew the amount he had deposited with the real estate agent, and then it became evident to him that he could not buy land of equal value to the land in question for less than twelve dollars per acre; that finding that Williams refused to confirm the sale made by the real estate firm to himself, he (Watt) filed suit on March 25th, 1901, claiming damages; that the suit was dismissed on exception of no cause of action, and that then plaintiff filed the present suit.

An attachment was issued against the land and a curator *ad hoc* appointed. The curator first filed an exception, which was referred to the merits, and then his answer was filed.

Coffall and the real estate agent intervened in the suit, and to their petition of intervention, plaintiff filed an answer. There was judgment for the defendant, and intervenors and plaintiff appeals.

Exceptions to rulings are urged upon our attention by plaintiff; that he was not permitted to prove an arrangement which he claimed to have made with the agent he assumed had authority, and in the second place that he was not permitted to prove the agent's acceptance of the arrangement.

As we do not consider that the real estate agent had authority to bind the defendant, we are not of the view that if the evidence had been admitted it would have a controlling bearing on the issues. The amount allowed the curator for his services gave rise to another issue.

Plaintiff submits that nothing should be taxed against him but the ten dollars. The statute also leaves it to the discretion of the court to increase the amount in proportion to the services rendered. And as to the fee the advocate is entitled to ten dollars as a fee—and on proof the court may increase the amount in proportion to the services rendered. R. S. 108. The amount does not appear large. We do not think it should be reduced on appeal.

We are not convinced that consent was given by the defendant, the asserted vendor of the plaintiff, to the extent and in the manner required. He had, by letter to a real estate firm, expressed the willingness to sell the land at a price he mentioned. About two years after the real estate agent had received this letter he conceived the idea that it would be possible for him to sell the land and accordingly communicated with plaintiff, in terms which manifested a pronounced desire to effect the sale of the land of defendant. Plaintiff consented, and his contention is that he deposited the price of the land. It remains as a fact that there never was a delivery of the price in the manner required to enable the defendant to call upon any one for an amount deposited to his credit. If a right had been acquired by plaintiff to the title it devolved upon him to complete the sale as far as he was concerned by depositing the price or offering to pay the sum representing the price.

The defendant had not bound himself to sell the land to plaintiff through the agency of any one. No one was authorized to sign the deed or to bind him as a vendor. Plaintiff, and the real estate agent, made no attempt to close the sale outright, but the deed was sent to the defendant at his home in England to be signed and on its receipt defendant did not sign and return it, but wrote that the matter would receive

his attention at once. We are not of the opinion that this was an acceptance in law, although, as a matter *in foro conscientiae* it should be different. Later, he declined to sign, and sold the property to another, whose claim is set forth in a petition of intervention.

There never was between plaintiff and defendant an absolute offer to sell on the part of the latter to the former and an acceptance of the offer. The *consensus in idem placitum* is wanting between these two. The asserted agency through which it is contended he bought has not so acted under the circumstances as to bind defendant. They (the agency in question) were not given the control of the property. Plaintiff says that he went into possession under authority received from this agency to go into possession. They had no authority to place him in possession. In fact he never went into actual possession.

Although some little doubt may hang over the issue between plaintiff and defendant, there can be none as to the title of the intervenor whose right begins at a date prior to any recorded deed. True, the deed under which they own was passed after letters and *ex parte* declarations had been filed, and even if it had been passed after the suit of plaintiff had been brought, the letters and declarations were not deeds or equivalents to deeds. They did not convey notice of a sale and the intervenors cannot be held to have had the notice required to legally warn them not to buy.

The suit between the plaintiff and the defendant is not such a notice of itself as the law requires.

As we take it intervenors had no knowledge of the pending suit and they had the right to transact on the face of the record in the clerk's office.

The law and the evidence being in favor of the defendant and intervenors, the judgment appealed from is affirmed.